## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOHN LEE**, Reg. No. 72420-004
Allenwood LSCI, P.O. Box 1000
White Deer, PA   17887

        Plaintiff,

     v.                        Civil Action No. 05-1665 (RWR)

**U.S. DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue, NW
Washington, DC   20530,

        Defendant.

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Freedom of Information Act has several related goals.  It is meant to promote honest government and transparent governmental decisions.  It is meant to make the criteria for governmental decisions available to those who will be affected by them.  Perhaps most significantly, it is meant abolish the tyranny of secret law by which, away from the harsh light of day and the inspection of neutral judges, governments may make up the rules as they go along, accountable to no one.  "The [Freedom of Information] act's indexing and reading-room rules indicate that the primary objective is the elimination of 'secret law.'  Under the FOIA an agency must disclose its rules governing relationships with private parties and its demands on private conduct."  Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Studies 775, 777 (1980).

## I. The Documents Provided by Defendant

Defendant has provided a set of documents responsive to Plaintiff's request. They amount to 26 pages and were received by Plaintiff on November 8, 2005, six months after they were originally requested. In the Declaration of Thomas J. McIntyre which accompanied Defendant's motion for summary judgment, Mr. McIntyre states that the only redactions are the names of third parties and court case numbers. While Plaintiff doubts that these redactions were required under the principles of *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989)[1], in this case it makes no difference. Plaintiff also accepts Defendant's assertions relating to the thoroughness of the search.

The documents provided by Defendant consist of a series of sample motions which in effect convert a federal restitution order to a civil judgment in favor of the United States, which is then registered with the provincial courts in Canada. Thereafter, the United States can move to collect on the judgment without the necessity of proving the underlying case, and distribute the proceeds to the victims in the criminal case. In a case of telemarketing fraud or the like, where many victims are entitled to some comparatively small amount of restitution, this is a useful mechanism. In the instant case, however, Mr. Lee has already confessed to civil judgments in favor of the single victim in an amount which exceeds the $10 million dollars ordered in

---

[1]  *Reporters Committee for Freedom of the Press* holds that rap sheets containing arrest information should not be disclosed without protecting the privacy interests of the subjects. Similarly, this Circuit has ruled that pardon applications containing "non-public personal information," should not be disclosed in FOIA actions. *Judicial Watch v. Dept. of Justice*, 365 F.3d 1108, 1125-26 (D.C. Cir. 2004). By contrast, the withheld information in the instant case is reported to be court case numbers and the names of the parties. Defendant cites no authority for the proposition that public information from the captions of federal court cases should be withheld from documents produced under the FOIA.

restitution.  There is no reason for the United States, in this case, to interject itself in the victim's

efforts to finish collecting on whatever restitution is owing.[2]


### III.  Why the Production of the Documents Does Not Conclude the Case

The belated production of these documents, however, does not entitle Defendant to

summary judgment.  Defendant's Motion for Summary Judgment utterly disregards the two other

claims in the complaint: (1) that Defendant's public information about the international prisoner

transfer program states that Defendant treats unpaid special assessments, fines, and restitution as

discretionary factors when, in fact, Defendant treats unpaid restitution as an absolute bar to

international transfer, and (2) that at least some of the information about the international

prisoner transfer program should have been published in the Federal Register.


### A.  Defendant's Public Information Continues to be False and Misleading

Defendant has denied that its public information about the program is false and

misleading.[3]  Whether Defendant treats unpaid restitution as a bar to transfer (as Plaintiff claims),

or as a negative factor which, like unpaid special assessments and unpaid fines, can be somehow

overcome (as Defendant claims) should be a readily discoverable fact.  Based upon Defendant's

handling of Plaintiff's case and others, we think it clear that nothing trumps outstanding

---

[2]  We say "whatever restitution is owing" because there are substantial issues relating to the valuation of some of the property which has been surrendered to the victim, as well as to how much of the victim's attorney's fees may be fairly charged to Mr. Lee.  See Mr. Weiner's affidavit at paragraph 7 (attachment #2).

[3]  See Defendant's Answer at paragraph 13.

restitution.[4]  Answers to the interrogatories which Plaintiff has propounded and which Defendant

is resisting should make it abundantly clear.  If the information which Defendant offers on its

website[5] to inmates, their families, and their attorneys is indeed misleading, Plaintiff will ask the

Court to order Defendant to correct the website and notify the public of the truth, as well as to

order appropriate relief to Plaintiff.[6]

Whether restitution is a bar to transfer or merely one factor in the decision-making

equation is a material fact at issue in the case.  Summary judgment is not available until it has

been decided.

### B.  Plaintiff Was Harmed by the Decision Defendant Based on Secret Law

As the handling of Plaintiff's criminal case below makes clear, neither the prosecutor nor

Plaintiff's lawyer understood that Plaintiff would not be approved for transfer because of the

---

[4]  Defendant has never denied that Plaintiff is sixty-two years old and a Canadian citizen, that he has already paid $8 million in restitution out of the $10 million imposed, that he received a downward departure at sentencing for his extraordinary efforts to make full restitution, that he intends to make the remaining restitution when he is able to do so, and that Defendant's transfer was anticipated by prosecutor and the sentencing judge.  Defendant has never been able to identify a single negative factor in Plaintiff's transfer application aside from the unpaid restitution.

[5]  See attachment #1, a text version of excerpts from Defendant's website printed on December 17, 2005.  See especially *How the Program Works,* ("The decision to approve or deny a proposed transfer is committed to the discretion of the Department of Justice and is based on the entire record of the offender.  The factors considered include . . . outstanding fines or restitution orders. . . ."), and *Guidelines for Evaluation Prisoner Applications for Transfer* at (2)(g), (placing unpaid court-ordered assessments, fines, or restitution in a single category).  The original may be seen at www.usdoj.gov within Criminal Division's part of the site.

[6]  Informal efforts to persuade Defendant to correct its public information have been unavailing.  See attachment #4, a March 14, 2005, letter from Plaintiff's counsel to Defendant, to which no response was received.

Defendant's secret rule against transferring applicants with outstanding restitution. And why should they have known? Defendant's public information provided not a hint as to Defendant's true policy and practice. As the affidavit from Plaintiff's criminal defense lawyer[7] makes clear, he did everything he could to assure that Plaintiff would be allowed to transfer to Canada: he obtained a written statement from the prosecutor that there would be no objection to Plaintiff's transfer, he obtained a recommendation from the sentencing judge on Plaintiff's transfer, and he even obtained a rare sentencing concession from the prosecutor and the judge recognizing Plaintiff's extraordinary restitution to the victim. But for Defendant's secret policy, Plaintiff would have transferred to Canada months ago.

Plaintiff is not the only person who has been harmed by Defendant's false and misleading information. The second affidavit attached to this pleading is from Pamela B. Stuart,[8] a lawyer with extensive international criminal experience who has handled at least five international prisoner transfer cases. As she explains, she did not know of Defendant's policy on restitution when she undertook to represent a transfer applicant in 2002. When her client's transfer application was denied, Ms. Stuart asked Defendant why. She was told that "the real reason for the denial was that the Department of Justice had been pressured by members of Congress not to transfer federal prisoners until they had paid outstanding restitution orders. [Defendant] advised [Ms. Stuart] that [her] client would not be approved for transfer so long as the restitution order was unsatisfied, notwithstanding any other strengths or weaknesses of his application." (Attachment #3 at paragraph 5.) Confused and angry over the denial of his application, her client

---

[7] See attachments #2 and #2A.

[8] See attachment #3.

could not believe that she did not know in advance that his application would be denied, and he complained to Bar Counsel.

## IV.  Conclusion

At this point there is no way of knowing how many other criminal defendants and attorneys have been caught unaware of Defendant's secret policy.  The magnitude of the problem may be important to this Court in deciding how Defendant should go about correcting its public information and making amends to those who have been harmed.  The affidavits from Mr. Weiner and Ms. Stuart, viewed in conjunction with Defendant's decision to ignore Plaintiff's claims in its pleadings and its attempt to cut off further inquiry, strongly suggest that Defendant's conduct cannot be defended on the merits.

As Defendant recites in its Motion for Summary Judgment, all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and a movant is entitled to summary judgment only where no genuine issue of material fact remains.  Because genuine issues of material fact remain, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

Dated: December 19, 2005

_____
Sylvia Royce
DC Bar 924035
5505 Connecticut Avenue, NW #340
Washington, DC   20015
Tel: (202) 362-3445
Fax: (202) 686-4271
sylvia_royce@hotmail.com
Attorney for Plaintiff John Lee

-6-

## List of Attachments to Plaintiff's Opposition to
## Defendant's Motion for Summary Judgment

#1    Public information from Defendant's website (www.usdoj.gov) about the international prisoner transfer program.

#2    Affidavit from attorney Jeffrey S. Weiner (Plaintiff's lawyer in Case No. 03cr60288).

#2A    Plea agreement in Case No. 03cr60288.

#3    Affidavit from attorney Pamela B. Stuart.

#4    March 14, 2005, letter from Plaintiff's counsel to Defendant.